**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Eugene Laigon | : | |
| 834 Chestnut Street, Apt. 1416 | : | |
| Philadelphia, PA 19107 | : | |
| Plaintiff, | : | NO.: 11-3339 |
| v. | : | |
| | : | |
| Philadelphia Mental Health Care Corp., | : | |
| Municipal Services Bldg. | : | |
| 1401 JFK Boulevard | : | Jury of Twelve (12) Jurors Demanded |
| Philadelphia, PA 19109 | : | |
| | : | |
| PMHCC, Inc. | : | |
| 123 South Broad Street | : | |
| 23rd Floor | : | |
| Philadelphia, PA 19109 | : | |
| | : | |
| and | : | |
| | : | |
| John Does 1-10 | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction and Statement of Facts.**

Plaintiff, Eugene Laigon ("Laigon") asserts claims under the Americans with

Disabilities Act and Family and Medical Leave Act which arise out of Laigon's

employment with Philadelphia Mental Health Care Corp. and PMHCC, Inc.

("Defendants").   Plaintiff's claim under the ADA relates to his termination from

employment while out on leave, due to his disability and the Defendants' failure to

properly accommodate his disability.   Laigon's claim under the Family and Medical

Leave Act arises out of the Defendants' failure to properly and fully restore Laigon's

employment privileges after his initial return to work in October 2007, going forward.

On October 29, 2001, Plaintiff was hired by Defendants as a financial policy advisor.  In June, 2007, Plaintiff became temporarily disabled due to an accident in which plaintiff was struck by a SEPTA bus while walking in his Philadelphia neighborhood. On June 5, 2007, as a result of the accident Plaintiff took leave from his employment with Defendants pursuant to the Family and Medical Leave Act ("FMLA").  Plaintiff was absent on FMLA leave for twelve (12) weeks due to his injuries:  cervical and lumbar myelopathy and ambulatory dysfunction and upper extremity dysfunction which manifests itself and symptoms like difficulty walking and using his hands. (See Complaint).  Further, as a result of the accident, Plaintiff's left hand was crushed, requiring pins and surgery.

In August 2007, after the twelve (12) weeks of FMLA leave expired, Plaintiff returned to work for Defendants in an 80% capacity.  Plaintiff was limited to two (2) hours per day of typing, limited to lifting anything over five (5) lbs., and further advised to limit his repetition.  Plaintiff's physician never limited the Plaintiff's hours of work. The reduction in Plaintiff's hours was done solely at the directive of Defendants in an effort to evade paying Plaintiff his full salary.

On October 8, 2007 at the request of Defendants' representative, Thomas Schaeffer, Plaintiff returned to worked full-time at 100% capacity. At that time, Thomas Schaeffer was no longer a PMHCC employee, yet he retained his duties as Plaintiff's full-time supervisor. Further, Schaeffer continued to remain Plaintiff's direct supervisor, and represented Defendants in l job related issues with respect to Plaintiff's employment.

On November 29, 2007, Laigon was cleared to return to work full-time at PMHCC by John S. Taras, M.D.  At all times, Laigon had kept Ellen Steiker and

Schaeffer apprised of his progress on an ongoing basis and they were aware of his intention to be cleared for full-time work was intending even prior to the November 29, 2007 office visit with Dr. Taras.

Despite the adjustment upward in hours worked, and the fact that Plaintiff was working at 100% full capacity in October, 2007, Defendants only paid Plaintiff at a rate of 80% of his salary prior to the accident.    Thomas Schaeffer, continually advised Plaintiff that he should not worry, and that he would be compensated the extra 20% of salary that he was owed. Schaefer repeatedly advised Plaintiff that he would be "caught up" on the payroll soon.  Plaintiff was owed an extra 20% of his salary from October 9, 2007 going forward, and Plaintiff was repeatedly assured by Schaefer that there would be no issue with him receiving his full-time salary, including back pay.

On December 1, 2007, Laigon drafted a letter to Ms. Steiker requesting to be returned to full-time status as soon as possible, a meeting at her convenience to discuss his return to full-time status, and that she submit paperwork to PMHCC concerning the change to his status so his salary can be restored without delay.  On December 3, 2007, Laigon placed the letter and certificate in an interoffice mailing envelope and sent it directly to Steiker.  Laigon did not directly forward his full-time status work certificate to PMHCC human resources due to a previous instance in which he was reprimanded for raising employment issues "outside the chain of command."

In late 2002, Laigon had been reassigned to work at Philadelphia Safe and Sound. At that time Laigon remained a PMHCC employee under the direction of Steiker and the division of social services; never becoming a Philadelphia Safe and Sounds employee. At that time, it was explained to Laigon by Steiker that he was on "long-term loan" and

counted on as in-kind support by the City of Philadelphia to Philadelphia Safe and Sound on the city budget books.  Then, in September 2007, Laigon received a copy of a memorandum requesting his annual performance review from Defendant, PMHCC.  The memorandum was sent to his home address and identified Theresa Copeland of Philadelphia Safe and Sound as Laigon's supervisor.

On September 27, 2007, Laigon sent an e-mail to the PMHCC Human Resource Director, Sylvia Cleveland-Jackson, noting that Ellen Steiker was Laigon's supervisor, not Copeland.  In return for sending this e-mail, Laigon received a letter censuring and rebuking him for going "outside of the chain of command", and also reminding him that nothing is official in any way until it comes in writing from his supervisor.  The censure was authored directly by Cleveland-Jackson, and chided and embarrassed Laigon.  At that point, Laigon learned to not contact others outside the chain-of-command when inquiring with PMHCC as to certain employment issues.

After being warned against communicating changes directly with PMHCC HR staff without going through his immediate supervisor in such a disproportionately stern warning, Laigon never tried to communicate directly in this manner again with PMHCC HR staff, letting such things go through official channels, including his supervisors, no matter how slowly they occurred. Nontheless, Steiker received Laigon's December 3, 2007 letter, requesting return to full-time status, as well as Dr. Taras' certificate of fitness to return to work full-time.

On December 17, 2007, Schaeffer called Laigon into his office and informed Laigon that Steiker had advised Schaeffer the workload was light during the holiday season, as well as being slow due to the impending switch of mayoral administrations.

Schaeffer continued and advised Laigon that Steiker did not need Laigon to work full-time at that point.  Knowing Steiker's style by this time, Laigon knew that when she delivered such messages through Schaeffer, it meant she did not want to further discuss the issue.  Laigon believed that any attempt to force discussion of the issues with Steiker in such situation would be fruitless and counterproductive.

Schaeffer further informed Laigon that later in the fiscal year, approximately March or April 2008, the workload would seasonally increase, and justify his return to full-time status, and thus increase his salary proportional to his return to full-time status.

While disappointed, Laigon accepted this exchange with Schaeffer at face value, and marked his calendar to remind himself to raise the issue with Schaefer in March.  At no time did Laigon believe that the paperwork requesting his full-time status returned to work had not been sent to PMHCC Human Resources by his supervisors Steiker or Schaeffer.  In mid-March, 2008, as the workload increased, Laigon reminded Schaeffer of his promise, and Schaeffer advised Laigon that he would speak to Steiker about moving him back to full-time.  By April 16, 2008, no further discussion on the issue of Laigon's return to full-time work had occurred.  The following week, around April 23, 2008, Schaeffer called Laigon into his office again and advised that the fiscal situation was tight, and all budgets were being scrutinized. Schaeffer further advised Laigon that Steiker claimed she cannot afford "an increased labor expenditure" on her budget and that she had no choice but to keep Laigon at the 80% salary level and that his salary had been frozen.  Subsequently, on Wednesday, October 8, 2008, Schaefer asked Laigon if he were physically capable of going back to work full-time.  Laigon stated that he had felt ready since the time he been cleared for full-time work by Dr. Taras on November 7,

2007, and that he was happy to return to work full-time.  Laigon asked Schaeffer how long it would take him to set up the full-time status with PMHCC, and Schaeffer advised that he wanted Laigon to begin working full-time immediately.

Laigon inquired with Schaeffer as to what he needed to do to obtain 100% of full-time salary, and Laigon was instructed by Schaeffer that he did not need to do anything, and that Schaeffer would handle.  Schaeffer assured Laigon that he would take care of the administrative tasks with PMHCC concerning the full-time change.

As of October 9, 2008, Laigon was working full-time for Defendants, coming to work by 9:00 a.m. at the latest and working until 6:00 p.m. to 6:30 p.m.  Plaintiff was working Monday through Friday, yet only being paid for part-time work.

On December 22, 2008, Plaintiff's medical condition worsened, and as a result, Plaintiff took FMLA leave from Defendants.  Plaintiff used accrued time off and paid leave, including vacation and sick days, and his intention was to fully return to work when he was medically able and upon doctor's orders.  Plaintiff had several conversations with Schaeffer concerning his intention to return to work when his medical condition improved and Schaeffer advised Plaintiff that his position would be held and waiting for him when he returned.  On August 19, 2009, Plaintiff received a letter from Defendants authored by Sylvia Cleveland-Jackson, indicating that he was terminated from employment.  Cleveland-Jackson authored and signed that letter in direct contravention of the policies and procedures of Defendants. Dr. Borislow testified that the Defendants' policies require him to sign all termination letters.

Plaintiff respectfully request this Honorable Court deny Defendant's Motion for Summary Judgment.  By terminating Plaintiff while he was out on Family and Medical

Leave, Defendants violated the ADA, and further, Defendants failed to reinstate the employment privileges (namely the privilege of being a full time employee with a full time salary).

## II.    Argument

A.    Defendants Violated the Americans with Disabilities Act When Defendants Terminated Plaintiff.

As an initial matter, Defendants argue that Plaintiff's ADA claim should be denied on the grounds that he is permanently disabled and unable to work.  While it is undisputed that today, and at the time of Plaintiff's deposition he is disabled and his medical condition is not expected to improve, but Plaintiff's current medical condition and status is irrelevant to the Court's inquiry, which should be limited to the Defendants' decision to terminate Plaintiff at the time he was terminated.  Plaintiff's current medical status is irrelevant ot the Court's determination as to whether Laigon was terminated because of his disability.

The ADA "prohibits certain employers from discriminating against individuals on the basis of their disabilities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 475, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) superceded in part, ADA Amendments Act of 2008 ("ADAAA"), Pub.L. 110–325, 122 Stat. 3553 (2008).  The statute provides: "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

Discrimination under the ADA encompasses not only such disparate treatment but also the failure to provide a reasonable accommodation for an individual's disability. The

ADA provides that an employer engages in discrimination when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ..., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that (1) he has a disability within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by her employer; and (3) he has suffered an adverse employment decision as a result of discrimination. Mills v. Temple University, --- F.Supp.2d ----, 2012 WL 1122888 (E.D.Pa. 2012), citing, Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir.2004).

There is ample evidence demonstrating that Plaintiff was in fact fired as a result of his disability.  Plaintiff has demonstrated a prima facie case.  First, it is undisputed that Plaintiff is disabled.  Second, it is undisputed that Plaintiff was qualified at all times to perform the essential functions of his job.  Finally, it is undisputed that he was fired by Defendants without any reason, while he was out on leave, while he was recuperating. Defendants have failed to offer any credible reason for Plaintiff's termination.  Laigon was out on FMLA leave at the time of his termination, after being assured of his return to work by his supervisors as well as Defendants' human resources employees.  Further, Plaintiff was attempting to recover enough to return to work and the Defendants knew this, but took the opportunity to fire him at the time he was out of the office recuperating. Defendants' explanation that the Plaintiff's job was eliminated due to budget cuts strains

credulity, because out of all the positions to be cut for budgetary reasons, Plaintiff's position was the only position cut.

B.      Defendants Violated the Family and Medical Leave Act When Defendants failed to Reinstate Plaintiff's Employment Privileges After his Return to Work.

The FMLA entitles an eligible employee, upon return from FMLA leave, "to be restored ... to the position of employment held ... when the leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment,"  29 U.S.C. § 2614(a)(1), and prohibits an employer from interfering with, restraining, or denying the exercise of or the attempt to exercise FMLA rights, id. § 2615(a)(1).  Breeden v. Novartis Pharmaceuticals Corp., 646 F. 3d 43 (C.A.D.C., 2011).

The Department of Labor regulations clarify what constitutes an equivalent position.  An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.  29 C.F.R. § 825.215(a).  Breeden v. Novartis Pharmaceuticals Corp., 646 F. 3d 43 (C.A.D.C., 2011).

FMLA provides employees with protection for exercising their statutory rights. An employee who believes these rights have been violated may assert a claim under either an interference or retaliation theory of recovery. See 29 U.S.C. § 2615(a)(1) (prohibiting interference); 29 C.F.R. § 825.220(c) (prohibiting retaliation). To prevail on an unlawful interference claim, a plaintiff must show that (1) she was entitled to benefits

under FMLA and (2) the employer denied those benefits. Sarnowski v. Air Brooke Limousine, 510 F.3d 398, 401 (3d Cir.2007). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Callison v. City of Phila., 430 F.3d 117, 120 (3d Cir.2005). A plaintiff claiming that she was unlawfully retaliated against for exercising an FMLA right must show that (1) she invoked an FMLA right, (2) she suffered an adverse action, and (3) the adverse action was causally related to the plaintiff's exercise of FMLA rights. Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508–509 (3d Cir.2009).

It is clear that Defendants denied Plaintiff benefits and privileges of his employment upon his first return from FMLA leave.  As set forth above, Plaintiff was never actually restored as a full time employee, and the full time salary to which he was entitled, despite his physicians never placing any such restriction upon him at the time he returned to work.  Plaintiff was working full-time at the request and behest of his direct supervisor, Schaeffer, whom it is uncontested, was at all times acting by and on behalf of the Defendants.

Further, Defendants argue that Plaintiffs' notice to Defendants at the time he returned to work full time was insufficient.  This argument is without merit.  Plaintiff provided adequate and clear notice to his supervisors, Schaeffer and Steiker, of his return to work after he was required to take FMLA leave.

The regulations provide some guidance as to what sort of notice is sufficient. It is clear that an employee need not give his employer a formal written request for anticipated leave. Simple verbal notification is sufficient:

An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA....29 C.F.R. § 825.302(c).  See also Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir.1995).  The issue is whether the employee has "state[d] a qualifying reason for the needed leave."  29 C.F.R. § 825.208(a)(2).

Moreover, the regulations are clear that employees may provide FMLA qualifying notice before knowing the exact dates or duration of the leave they will take. For instance, an employee must "make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer...." 29 U.S.C. § 2612(e)(2)(A). Thus, an employee who needs medical treatment may inform his employer of his need for leave before scheduling the treatment so as to reasonably accommodate the needs of the employer. Additionally, the 30-day statutory notice requirement is designed to be flexible, and an employee is not required to give greater notice than is "practicable". 29 U.S.C. § 2612(e)(2)(B).

Other courts have interpreted this notice requirement with the liberal construction that is suggested by the text. The Sixth Circuit Court of Appeals has held that "[t]he right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future."  Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir.2001). To determine when an employee's intention to take leave has been sufficiently conveyed to his employer so as to constitute requisite notice under the FMLA, the court found it useful to employ the following test:

> [T]he critical test for substantively-sufficient notice is whether the information that the employee conveyed to the

> employer was reasonably adequate to apprise the employer
> of the employee's request to take leave for a serious health
> condition that rendered him unable to perform his job.

Brenneman v. MedCentral Health Sys., 366 F.3d 412, 421 (6th Cir.2004).

In providing notice, the employee need not use any magic words. The critical question is how the information conveyed to the employer is reasonably interpreted. An employee who does not cite to the FMLA or provide the exact dates or duration of the leave requested nonetheless may have provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA. Sarnowski v. Air Brooke Limousine, 510 F.3d 398, 403 (3d Cir.2007).

Here, Plaintiff's requests for leave and his communications to Defendants, by and through his supervisors were adequate per the regulations promulgated by the Department of Labor.

From the time period after Plaintiff's initial return to work in August 2007, after the bus accident, through his second FMLA leave in December of 2008, Plaintiff was improperly limited by Defendants at work.  Plaintiff was never paid in accordance with his full-time salary, and Plaintiff was never returned to the position he held before taking his FMLA leave.  Even after Plaintiff returned to work full-time, he was never fully compensated as required under law.  Defendants' reasons why Plaintiff was not fully compensated, be it the actions of their representative Schaeffer or the erroneous claim that Defendants never received notice, is immaterial.  Defendants are obligated under the law to compensate Plaintiff in the amount commensurate with Plaintiff's salary and benefits prior to Plaintiff taking FMLA leave.  Defendants had a duty to provide Plaintiff

a position equal to the position he held prior to taking leave and Defendants breached that duty.

## III.     Conclusion

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Defendants' Motion for Summary Judgment.

**WEISBERG LAW, P.C.**


/s/ Graham F. Baird, Esquire
Matthew B. Weisberg, Esquire
Graham F. Baird, Esquire
Attorneys for Plaintiff